IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| Veronica Lopez, Brent Hellman, Megan McGuinn, Shoshana Swain, Alejandra Ventura, Hamma Choudhry, and all others similarly situated under 29 U.S.C. § 216(b) § § § § § § *Plaintiffs*, § § v. § Fun Eats and Drinks, LLC dba Champps, § § *Defendant*. § § § § | | Civil Action No. 3:18-cv-01091-X |

**DEFENDANT FUN EATS AND DRINKS, LLC DBA CHAMPPS'
BRIEF IN SUPPORT OF DEFENDANT'S RESPONSE TO PLAINTIFFS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Fun Eats and Drinks, LLC dba Champps ("Defendant" or "Champps") files this Brief in Support of Defendant's Response to Plaintiffs' Motion for Partial Summary Judgment [Dkt. 37] and Plaintiffs' Brief in Support of Plaintiffs' Motion for Partial Summary Judgment [Dkt. 38].

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................4

II. OBJECTIONS.....................................................................................................................5

III. FACTS ...............................................................................................................................6

IV. LEGAL STANDARD .......................................................................................................7

V. ARGUMENT AND AUTHORITIES.................................................................................7

    A.  Defendant gave notice of its tip share program ................................................7

    B.  Tips were shared with persons who customarily and regularly receive tips........7

    C.  Plaintiffs' Declarations create genuine issues of materials facts .........................9

    D.  Plaintiffs fail to show tips were shared with persons in non-tipped positions....11

    E.  Plaintiffs do not show that deductions or payment of expenses reduced their wages below the minimum wage................................................................11

    F.  Defendant has a good faith defense ...................................................................14

VI. CONCLUSION..................................................................................................................15

CERTIFICATE OF SERVICE .................................................................................................17

# **TABLE OF AUTHORITIES**

**Cases**

*Barcellona v. Tiffany English Pub., Inc.*,
597 F.2d 464 (5th Cir. 1979) ............................................................................................. 13
*Benton v. Deli Mgmt.*,
396 F. Supp. 3d 1261 (N.D. Ga. 2019) ............................................................................. 13
*Bernal v. Vanker Enters.*,
579 F. Supp. 2d 804 (W.D. Tex. 2008) ............................................................................. 12
*Brennan v. Haulover Shark and Tarpon Club, Inc.*,
1986 WL 587 (S.D. Fla., Jan. 27, 1986) ........................................................................... 13
*Chisolm v. Gravitas Restaurant, Ltd.*,
2008 WL 838760 (S. D. Tex., Mar. 25, 2008) .................................................................. 13
*Cross v. 440 Corp.*,
2008 U.S. Dist. LEXIS 144933 (N.D. Ga. 2008) ............................................................... 9
*Lujan v. National Wildlife Fed'n*,
497 U.S. 871 (1990) ............................................................................................................ 5
*Pedigo v. Austin Rumba*,
722 F. Supp. 2d 714 (W.D. Tex. 2010) ............................................................................... 8
*Steele v. Leasing Enterprises Limited*,
326 F.3d 237 (5th Cir. 2016) ............................................................................................ 14
*TIG Ins. v. Sedgwick James*,
276 F.3d 754 (5th Cir. 2002) .............................................................................................. 5
*Tolan v. Cotton*,
572 U.S. 650 (2014) ..................................................................................................... 7, 11

**Statutes**

29 U.S.C. § 203(m) ........................................................................................................ 4, 7
29 U.S.C. § 260 ................................................................................................................ 14

**Other Authorities**

DOL Opinion Letter
FLSA 2009-12 (Jan. 15, 2009) ........................................................................................... 8

**Rules**

Fed. Rule Civ. Proc. 56(c)(4) .............................................................................................. 5

**Regulations**

29 C.F.R. § 531.36(b) ...................................................................................................... 11
29 C.F.R. § 531.56(e) ...................................................................................................... 11

## I.   INTRODUCTION

Each of the named Plaintiffs and Opt-ins ("Plaintiffs" or "Opt-ins") were employed at Defendant's Champps location in Irving, Texas.  Due to the pandemic, such location is now closed and will not re-open.  Each of the Plaintiffs worked in tipped positions as servers and bartenders.  While employed in those positions, Plaintiffs were paid a cash wage of $2.13 an hour plus tips so that each plaintiff received more than the required minimum wage of $7.25 an hour for each hour worked as a server or bartender.  This fact is not in dispute.  Defendant had a tip sharing/tip pool program of which Defendant gave notice, which Plaintiffs do not dispute.  Such method of paying Plaintiffs is permitted by the tip credit provision, 29 U.S.C. § 203(m), of the FLSA.  Defendant implemented and utilized this method in a lawful manner.  Although Plaintiffs assert that deductions for uniforms were made or not reimbursed, that they were charged for obtaining payroll records, and were charged more than the cost of meals, Plaintiffs have not asserted or shown that any of these actions, or any other actions of Champps, reduced their compensation below the minimum wage.

For Defendant to rely on the tip credit as a defense to this lawsuit, Defendant must have pleaded such as an affirmative defense, which it did.  *See* Defendant's Answer [Dkt.  8, Additional Defenses ¶ 14].  In addition, Defendant must show that it complied with the tip credit provision by giving notice to each of the Plaintiffs, and that it did not retain tips but shared tips with those employees who customarily and regularly receive tips.  Defendant can show, as set forth in this Brief, that it did both.

## II.   OBJECTIONS

In support of their Motion, Plaintiffs filed nine (9) Declarations. These nine Declarations are Exhibits 4-12 in Plaintiffs' Appendix [Dkt. 39-1, Ex. 4-12 at Plaintiffs' App. 127-146]. All nine Declarations are almost identical, cut-and-paste images, and differ slightly to the extent if the Declarant was a server or bartender. Each of the Declarants state that they contributed a "fixed percentage" to the tip pool or a "fixed percentage" to other employees, but do not state specifically what that percentage was. In addition, a Declarant states, in regard to walked tabs or cash register shortages, that such happened "multiple" times or occasions, but do not give any particulars or specifics on how many times such happened. They also state that they were required to buy or pay for uniforms but do not state the amounts of such payments. As a result, such statements are conclusory and do not give specific, admissible evidence and should be stricken. Fed. Rule Civ. Proc. 56(c)(4); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 887-888 (1990) (facts stated in declarations must be specific and constitute admissible evidence); *TIG Ins. v. Sedgwick James*, 276 F. 3d 754, 759 (5th Cir. 2002) (conclusory allegations and unsubstantiated assertions are no substitute for specific facts). As will be shown below, although the Declarations are almost identical and lack specificity some of the Declarations are inconsistent with other Declarations and are also inconsistent with Defendant's Corporate Representative deposition testimony creating genuine issues of material facts. Because of such defects, Plaintiffs have not put forth any evidence of the amount of their tips that were contributed to the tip pool or the amount of their tips that were applied to walked tabs or cash register shortages or the amount spent on uniforms or other items which means that there is no evidence whether such or any other deductions reduced their wages below the minimum wage.

### III. FACTS

Defendant does not dispute that Plaintiffs were paid $2.13 an hour plus tips for the times that Plaintiffs performed job duties as servers and bartenders for Champps. There were times when some of the Plaintiffs performed other duties and were paid $7.25 an hour, a fact that is not in dispute. Plaintiffs wore some of their own everyday clothing items as a part of the uniform, and that although it was against Defendant's policy, some of the Plaintiffs may have paid for a Cowboys jersey, and some of the Plaintiffs may have been charged for obtaining payroll records.

Regarding meals for the Plaintiffs, employees could purchase meals from Champps for 50% of the price for a menu item up to $15.00. It was against Champps' written policies for employees to be charged for walked tabs or cash register shortages. *See* Affidavit of James Covelli [Ex. 1 at Def. App. 1-2 ¶ 2; 109]. Plaintiffs' Declarations offer no proof that Plaintiffs had to pay for such items other than the conclusory Declarations, without specifics, that they did. Further, even if Champps did make any or all of the above deductions from the Plaintiffs' wages, Plaintiffs have still not demonstrated or proven how any such payments or deductions reduced their wages below the minimum wage. Without such proof, Defendant cannot be held to have violated the minimum wage requirement or the tip credit provision as will be shown, below.

Plaintiffs state that an unspecified percentage of their sales were contributed to a tip pool, and that a portion of that sales revenue was shared with "service bartenders" and "barbacks". Plaintiffs are mostly accurate in their descriptions of the position and duties of service bartenders and barbacks. However, Plaintiffs incorrectly claim that the service bartenders performed their duties outside of the view of customers and that service bartenders did not receive tips from customers. *See* Ritenour Depo, [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 40:16-42:1]. As will be shown below, service bartenders and barbacks were tipped employees who customarily and regularly

received tips at times relevant to this lawsuit. As will also be shown below, there is a significant difference between the Declarations of the Plaintiffs and the deposition testimony of Jarrett Ritenour, Defendant's Corporate Representative, as to how the tip share/tip pool worked and whether servers tipped service bartenders directly or whether service bartenders shared in the tips that were shared with the bartenders, all of which creates genuine issues of material facts that prevent the Court from granting Plaintiffs' Motion.

## IV.   LEGAL STANDARD

Plaintiffs' statement of the legal standard for summary judgments is correct, except that Plaintiffs fail to state that the Court must consider all evidence in the light most favorable to Defendant as the nonmovant. *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014). And the Court must resolve all reasonable doubts about the facts in favor of the nonmovant. *Id.* at 656.

## V.   ARGUMENT AND AUTHORITIES

A.   **Defendant gave notice of its tip share program.**

Plaintiffs do not assert that Defendant failed to give notice of its tip share/tip pool arrangement and Defendant believes that Plaintiffs do not dispute such fact. And Plaintiff did give notice. *See* Affidavit of James Covelli [Ex. 1 at Def. App. 1-2 ¶ 2; 4-106], which has a copy of the tip share/tip pool notice executed by each of the Plaintiffs attached. Defendant met its obligation under the tip credit provision section 203(m) of the FLSA to give notice.

B.   **Tips were shared with persons who customarily and regularly receive tips**.

Defendant did not retain Plaintiffs' tips and the tips in the tip pool were shared with persons who customarily and regularly receive tips which is permitted under section 203(m) of the FLSA. Plaintiffs, as tipped employees who customarily and regularly receive tips, state that their tips were shared with service bartenders and barbacks. It is true that service bartenders did not regularly

work at the main bar, but they did work assisting the bartenders and servers at a secondary, dining area bar in view of customers. *See* Ritenour Depo, [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 40:16-42:1]. Thus, even if the Plaintiffs' Declarations agree with Mr. Ritenour's description of the service bar location, the Declarations fail to accurately state whether the service bartenders worked in the view of customers or whether they interacted with customers. *See* Declaration of Veronica Lopez, [Dkt. 39-1, Ex. 5 at Plaintiffs' App. 130-131, ¶ 6] and the deposition of Mr. Ritenour [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 40:16-42:1]. Such difference itself in the evidence presents a genuine dispute of a material fact. Plaintiffs, in their Declarations, *see* for example the Declaration of Randi Gibson, [Dkt. 39-1, Ex. 6 at Plaintiffs' App. 133, ¶ 7-8], and Defendant, in Mr. Ritenour's deposition testimony, [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 36:12-38:10], agree on the duties of the barback and how they assist the bartenders.

This distinction is not trivial. It goes to the very heart of the question before the Court. Tip pools are not unlawful if they are shared between "tipped employees" Both service bartenders and barbacks are "tipped employees who customarily and regularly receive tips" where such employees perform work "in the bar area, in front of and around customers, and ha[ve] the opportunity to occasionally interact with customers." *Pedigo v. Austin Rumba*, 722 F. Supp. 2d 714, 732-733 (W.D. Tex. 2010); DOL Opinion Letter FLSA 2009-12 (Jan. 15, 2009). Thus, even if the service bartenders and/or barbacks participated in the tip pool, such participation would not have violated the FLSA's tip credit rules.

Plaintiffs do not offer any evidence that the Plaintiff-servers contributed an additional 1%, over and above the 3% of their sales, to the service bartenders [Dkt. 38, Section V.B.2., pg. 24-25]. The evidence Plaintiffs cite in support of this allegation (various Declarations) do not make this claim. Further, such contention is contrary to the Ritenour deposition testimony that only 3%

of gross sales were contributed to the tip pool. *See* [Dkt 39-1, Ex. 2 at Plaintiffs' App. 39:3-6]. Thus, neither Mr. Ritenour's deposition nor the Plaintiffs' Declarations support the allegation that Champps deducted an additional 1% of Plaintiffs sales for the benefit of the service bartenders.

Additionally, Plaintiff-servers contend in their Brief that non-existent employees shared in the tip pool. [Dkt. 38, Section V.B.2.i., pg. 28]. This is a nonsensical argument on its face. How could non-existent employees receive a portion of the tip pool? Moreover, the Declarations cited in support of this averment state only that there were times when food runners were not present. Presumably, other customarily tipped employees were present during those times and lawfully participated in the tip pool. The case cited by the Plaintiffs in support of this argument appears very different from our present case. *See Cross v. 440 Corp.*, 2008 U.S. Dist. LEXIS 144933, *13 (N.D. Ga. 2008). While the cited case is unpublished and not available in Westlaw, the narrative supplied by Plaintiffs suggests that the tip pool in that case was exclusively for food runners and, consequently, should not have been shared during shifts where no food runners were present. A copy of the opinion on the court's website shows that the violation was that the servers were required to tip a percentage of their sales for the food runners whether or not the food runners were scheduled, but that percentage was collected (retained) by the employer and deposited in a bank account from which the employer then paid the food runners, which was a clear violation of the tip credit. In our case, however, there were many positions eligible to participate in the tip pool and the absence of any one position would not thereby render the tip pool unlawful and Champps did not collect and deposit into a bank account any of the tips.

C.     **<u>Plaintiffs' Declarations create genuine issues of material facts.</u>**

The Declarations of Plaintiffs differ in their statements of the facts. Plaintiff Hellman, in his declaration that is Exhibit 4 of Plaintiffs' Appendix [Dkt. 39-1, Ex. 4 at Plaintiffs' App. 127, ¶

3-4], states he was both a server and a bartender. He states that he contributed to the tip pool both as a server and bartender but does not state that as a server he tipped the service bartenders. Plaintiff Lopez, in her declaration that is Exhibit 5 of Plaintiffs' Appendix [Dkt. 39-1, Ex. 5 at Plaintiffs' App. 130-131, ¶ 3-4, 7], states that she was a server and contributed to the tip pool and that she also tipped service bartenders. Plaintiff Gibson, in his declaration that is Exhibit 6 of Plaintiffs' Appendix [Dkt. 39-1, Ex. 6 at Plaintiffs' App. 132-133, ¶ 4-5], states that he was a bartender and contributed to the tip pool and tipped service bartenders. Plaintiff Hungerford, in her declaration that is Exhibit 7 of Plaintiffs' Appendix [Dkt. 39-1, Ex. 7 at Plaintiffs' App. 135-136, ¶ 3, 5], states that she was a server and contributed to the tip pool and tipped service bartenders. Plaintiff Swain, in her declaration that is Exhibit 9 of Plaintiffs' Appendix [Dkt 39-1, Ex. 9 at Plaintiffs' App. 139, ¶ 4], states that she was a bartender and contributed to the tip pool and shared her tips with food runners and barbacks but does not state that she shared her tips with service bartenders. These are examples of Plaintiff-servers and Plaintiff-bartenders differing on whether servers and bartenders tipped service bartenders. All of these declarations differ with the testimony of Mr. Ritenour who testified that servers tipped 3% of their sales to the tip pool, of which 2% was shared by the hosts and bussers and 1% went to the main bartenders. Ritenour Depo, [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 32:13-33:5; 39:3-9]. Then, according to Mr. Ritenour, the bartenders would share this 1% with the barbacks and the service bartenders. *Id*. The factual conflicts between the Plaintiffs' declarations and the testimony of Mr. Ritenour as to who contributed to and shared from the tip pool create genuine issues of material facts that prevent the Court from granting Plaintiffs' Motion. In ruling on the summary judgment, the Court should not rule on the weight or credibility of the testimony and evidence of the parties, *Tolan v. Cotton*, 572 U.S. 650, 656-657 (2014), and is to consider all of the evidence in the light most favorable to

Defendant as the nonmovant and resolve all reasonable doubts regarding the facts in Defendant's favor. *Id*.

D.  **Plaintiffs fail to show tips were shared with persons in non-tipped positions.**

Plaintiffs seek to establish that the servers were required to contribute tips to and share tips with non-tipped employees. *See* [Dkt. 38, Section V. B. 2. i. pg. 27, and Section III. D. 1. of Plaintiffs' Brief, pg. 11]. Plaintiffs argue that a person named "Ricky" received a tip and that Mr. Ritenour could not identify such person (could it be a nickname?) and therefore that Ricky, who served as a busser, a tipped position, receiving a tip was a violation of the tip credit provision because Mr. Ritenour could not identify him and a payroll record for him. The testimony does not show that Ricky was a non-tipped person but was a person who customarily and regularly received a tip. Likewise, Plaintiffs seek to establish that a person, Gerardo, who worked in a tip position but also at times worked in a non-tipped position as a dishwasher received a tip and Plaintiffs asserts in so doing Champps violated the tip credit provision. But Plaintiffs' citation of Mr. Ritenour's deposition testimony for such evidence, [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 98:7-99:13], does not show that Gerado received a tip in a non-tipped position. Mr. Ritenour's testimony is that Gerardo was working at times in a tipped position and at times in a non-tipped position. Even if a person named Gerardo who was in a tipped position and received a tip, but who for a few days worked as a dishwasher, Champps can still take credit for the time spent in a tipped position. The Code of Federal Regulations recognize that an employee can be employed in dual positions where one of the positions is a tipped position and the employer can utilize the tip credit for the tipped position. *See* 29 C.F.R. § 531.56(e).

E.  **Plaintiffs do not show that deductions or payment of expenses reduced their wages below the minimum wage.**

Plaintiffs' assertions regarding deductions from their pay or payments for uniforms, obtaining payroll documents, and other expenses are misplaced. Such deductions are not per se violations of the tip credit provision. Only if *deductions* reduce Plaintiffs' pay below the minimum wage would they be a violation of the tip credit provision. *See* 29 C.F.R. § 531.36(b). *See also*, Plaintiffs' Brief at page 19 [Dkt. 38 Section V.B.1., pg. 19], where Plaintiffs recite from a DOL fact sheet that a deduction for uniforms may not reduce the employee's wage below the minimum wage. The same is true for a deduction for meals. But *deductions* for uniforms and meals *were not made*. None of the Plaintiffs in their declarations state that deductions were made for uniforms or meals, but they all state that those were purchased. The amount that Plaintiffs' paid for uniforms and meals were not a deduction from Plaintiffs' wages that reduced Plaintiffs' pay below the minimum wage. And as Mr. Ritenour testified, Defendant did not make any money on meals purchased by the Plaintiffs. [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 106: 13-107: 11].

Plaintiffs have repeatedly cited *Bernal v. Vanker Enters.*, 579 F. Supp. 2d 804 (W.D. Tex. 2008) in connection with their assertion that deductions from Plaintiffs' wages or expenses incurred by Plaintiffs for uniforms or cash shortages and other expenses prevent Defendant from using the tip credit. But *Bernal* was essentially a case that denied the defendant a tip credit because the defendant did not give notice to the plaintiffs of the tip credit program. While the court did grant plaintiffs' motion for summary judgment that defendant could not use the tip credit because of the failure of defendant to give notice and also because of the plaintiffs having to cover cash shortages, the cases the court relied on to support its granting the summary judgment regarding cash shortages are cases where the courts denied a defendant's use of the tip credit because the pertinent deduction or expense in the case reduced the plaintiffs' wages below the minimum wage. One of the cases the *Bernal* court cited was *Brennan v. Haulover Shark and Tarpon Club, Inc.*,

12

1986 WL 587 (S.D. Fla., Jan. 27, 1986) wherein the court stated that plaintiffs covering cash shortages violated the tip credit because such reduced the plaintiffs' wages below the minimum wage. *Id*. at *11. Another case is *Chisolm v. Gravitas Restaurant, Ltd*., 2008 WL 838760 (S. D. Tex., Mar. 25, 2008) wherein a $1 glass breakage fee deduction from the plaintiffs' wages caused the defendant to lose the tip credit because the deduction brought the wages below the minimum wage. *Id*. at *4. An additional case is *Barcellona v. Tiffany English Pub., Inc*., 597 F.2d 464 (5th Cir. 1979) in which a lack of notice caused the defendant to lose the tip credit after a trial in the district court regarding that particular issue. Whether a deduction from wages reduces the wages below the required minimum wage is the pertinent analysis regarding the use of the tip credit. Plaintiffs have not shown that any deductions from Plaintiffs' wages reduced the wages below the required minimum wage.

Plaintiffs also assert that deductions and expenses for uniforms, shortages and other expenses amount to an illegal kickback. However, a case cited by Plaintiffs, *Benton v. Deli Mgmt*., 396 F. Supp. 3d 1261 (N.D. Ga. 2019) provides that a kickback occurs if the expense drives the wages below the minimum wage, which Plaintiffs have not shown.

Plaintiffs would have the Court believe that Defendant failed to keep records, but Defendant does have records and produced its records, in fact several thousands of pages, consisting of Plaintiffs' payroll records, Defendant's policies including the tip credit notice, its employee handbook for which Plaintiffs signed for, spreadsheets containing compensation and work scheduling information of each Plaintiff and other records, some of which Plaintiffs used in deposing Mr. Ritenour and attaching as exhibits to their Motion. While Defendant could not produce records of each meal that the Plaintiffs purchased from Champps, the lack of those records does not prove that the purchases of the meals reduced Plaintiffs' compensation below the

minimum wage. Although Plaintiffs have failed to show that their wages were reduced below the minimum wage, if there is any doubt about that there is a genuine issue of material fact as to whether any expenses, by deduction or otherwise, for which Plaintiffs were responsible reduced Plaintiffs' wages below the minimum wage.

F.     **Defendant has a good faith defense.**

Defendant denies that it violated the tip credit provision or that Plaintiffs were paid less than the minimum wage and that Plaintiffs are entitled to any damages. But even if Plaintiffs were entitled to damages, Plaintiffs are not entitled to liquidated damages because Defendant acted in good faith and had reasonable grounds to believe that it was complying with the tip credit provision and was not in violation of the FLSA. *See* 29 U.S.C. § 260; *see also Steele v. Leasing Enterprises Limited*, 326 F.3d 237, 246 (5th Cir. 2016).

Defendant purchased the Champps restaurants in October 2016 out of bankruptcy from Last Call Guarantor LLC ("Last Call"), which had filed for bankruptcy in August 2016. At the time of the purchase, Champps was told by representatives from Last Call that its Senior Vice President-Human Resources and another human resources person, who had extensive experience in the restaurant industry, had prepared the policies and employee handbook and that those had been reviewed by outside counsel, who also had extensive experience in the restaurant industry, and that they were compliant with law including the tip credit provision. Defendant, and persons associated with Defendant who also had extensive experience in the restaurant industry, reviewed the policies and employee handbook and believed them to be compliant with law including the tip credit provision. *See* James Covelli Affidavit [Ex. 1 at Def. App. 2-3 ¶ 5]. As further evidence of its good faith, Defendant complied with its obligation to give notice of the tip credit and gave notice to each of the Plaintiffs which the Plaintiffs signed. *See* Affidavit of James Covelli, [Ex. 1

14

at Def. App. 1-2 ¶ 2; 4-106]. In addition, Defendant included the tip credit policy in its employee handbook and also included its policy of employees not being responsible for cash shortages and walked tabs. *See* James Covelli Affidavit [Ex. 1 at Def. App. 1-2 ¶ 2; 107-109]. As Mr. Ritenour testified, Defendant provided the Plaintiffs with an apron, and the clothing that employees wore for uniforms were everyday items such as shirts and jeans. [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 99:14-100:4; 100:13-101:5; 101:20-102:3]. Mr. Ritenour was surprised that employees covered cash shortages and had to buy a Cowboys jersey as such were against Defendant's policy. [Dkt. 39-1, Ex. 2 at Plaintiffs' App. 104:16-105:12; 100:5-12; 101:6-14]. Defendant took the appropriate actions to comply with the tip credit provision and did not suspect that actions had been taken by the store manager that were contrary to its policies. The actions of Defendant show that it acted in good faith to comply with the tip credit provision and the FLSA and it had reasonable grounds to believe that it was in compliance with and not in violation of the FLSA. Defendant believes that it took the appropriate actions to comply with the FLSA and that Plaintiffs are not entitled to liquidated damages, but if there is some question as to Defendant's good faith defense, there is at least a genuine issue of material fact that prevents the Court from granting Plaintiffs' Motion on such issue.

## VI. CONCLUSION

Defendant has shown that it complied with the tip credit provision by giving notice to the Plaintiffs and by sharing tips with those who customarily and regularly receive tips. There is no dispute that Plaintiffs were paid a cash wage of $2.13 an hour plus tips while employed as servers and bartenders, both of which are tipped positions. There is no contention by or evidence from Plaintiffs that the compensation received by each Plaintiff was below the minimum wage. Even if the deductions from Plaintiffs' pay or expenses that Plaintiffs incurred may not be the best

practice, Plaintiffs have failed to prove that any actions of the Defendant reduced their compensation below the minimum wage. And, while Plaintiffs are not entitled to prevail on their claim and obtain damages, even if they were, which Defendant denies, Plaintiffs are not entitled to liquidated damages because Defendant has a good faith defense to any violation of the tip credit provision. For all of these reasons, Defendant respectfully requests the Court to deny Plaintiffs' Motion.

          Respectfully submitted,

          BROWN FOX PLLC

BY:   /s/ Stephen C. Key
       STEPHEN C. KEY
       State Bar No. 00791022
       JOHN L. FREEMAN
       State Bar No. 07425500

       8111 Preston Road, Suite 300
       Dallas, Texas 75225
       214.396.9278 (Key)
       214.396.9280 (Freeman)
       214.327.5001 (Facsimile)
       stephen@brownfoxlaw.com
       john@brownfoxlaw.com

       ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

      I, the undersigned, certify that a true and correct copy of the foregoing instrument was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure, on the 21st day of October 2020.

                                                                            /s/ Stephen C. Key