IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VERONICA LOPEZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | |
| | § | No. 3:18-cv-1091-X |
| FUN EATS AND DRINKS, LLC, dba | § | |
| CHAMPPS, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Brantley Starr. *See* Dkt. Nos. 4, 33.

Plaintiffs have filed a motion for partial summary judgment. *See* Dkt. No. 37. Defendant has filed a response and objections to Plaintiffs' evidence, *see* Dkt. No. 28, and Plaintiffs filed a reply, *see* Dkt. No. 29.

Plaintiffs seek partial summary judgment on liability for their Fair Labor Standards Act ("FLSA") minimum wage claim. Plaintiffs contend that Defendant failed to pay then the minimum wage and that Defendant cannot claim a tip credit.

In addition to their reply, Plaintiffs also filed a motion to strike. *See* Dkt. No. 44. Defendant filed a response to the motion to strike, *see* Dkt. No. 46, and Plaintiffs filed a reply, *see* Dkt. No. 48.

-1-

Plaintiffs ask the Court to strike an affidavit filed in support of Defendant's response in opposition because Defendant failed to disclose the testifying witness during discovery.

For the reasons explained below, the Court should grant both Plaintiffs' motion to strike and motion for partial summary judgment.

## Background

Plaintiffs are former employees of Champps, a restaurant and bar located in Irving, Texas. *See* Dkt. No. 38. Plaintiffs worked as servers and bartenders during the three years before they filed suit. *See* Dkt. No. 1 ¶¶ 11, 24-25.

Defendant Fun Eats and Drinks, LLC, is a Wyoming limited liability company that owns the Champps restaurant chain, including the Irving, Texas location. *See id.* ¶ 13. Fun Eats and Drinks purchased the Champps restaurants in 2016. *See* Dkt. No. 42 at 14.

Defendant paid Plaintiffs an hourly wage of $2.13 per hour, plus tips. *See* Deposition of Jarrett Ritenour ("Ritenour Dep."), Dkt. No. 39-1, Ex 2 at 32:7-10.

Defendant required Plaintiffs to pay for uniforms, walked tabs and cash shortages, payroll documents, and meals. Plaintiffs had to purchase and wear football shirts. *See, e.g.*, Declaration of Veronica Lopez ("Lopez Decl."), Dkt. No. 39-1, Ex. 5 at 131 ¶ 8; *see also* Dkt. 39-1, Ex. 3 at 124-25 (Champps manager notifying employees they must purchase "mandatory" football shirts to wear at work). Defendant required Plaintiffs to pay for "walked tabs" (tabs for customers that leave without paying) and cash register shortages at the end of shifts. *See, e.g.*, Lopez Decl. at 131 ¶ 10.

-2-

Defendant also required Plaintiffs to pay for meals during shifts at fifty percent of the menu price up to $15. *See, e.g.*, Lopez Decl. at 131 ¶ 9; *see also* Ritenour Dep. 105:21-106:21. And Defendant charged Plaintiffs for copies of payroll documents. *See* Ritenour Dep. 109:15-18; Dkt. No. 39-1, Ex. 13 (Payroll Deduction Forms).

Defendant required Plaintiffs to pool their tips. *See* Ritenour Dep. 32:16-22. Plaintiffs had to contribute three percent of their daily sales to the tip pool, *see id.*, and those tips were then distributed to other employees, including to barbacks and service bartenders, *see id.* at 32:16-19, 43:21-44:13. For several shifts, an employee named Gerado was tipped out as a busser while clocked in as a dishwasher. *See* Dkt. No. 39-1, Exs. 15 & 17. And a person named Ricky, who Defendant could not identify, was also tipped out as a busser during several shifts. *See* Ritenour Dep. 75:5-15; Dkt. No. 39-1, Ex. 15 at 167-77.

The named Plaintiffs filed this collective action suit against Defendant on behalf of themselves and all others similarly situated on April 27, 2018. *See* Dkt. No. 1. Plaintiffs bring a single claim under the FLSA, 29 U.S.C. §§ 206 and 215, alleging that Defendant failed to pay them the minimum wage. *See id.* ¶¶ 48-52.

On August 3, 2018, the Court granted the unopposed motion to conditionally certify the case as a collective action under 29 U.S.C. § 216(b). *See* Dkt. No. 16.

Following discovery, Plaintiffs filed this motion for partial summary judgment. And, after Defendant filed its response, Plaintiffs filed the motion to strike.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at

625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation,

-5-

improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine

issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

## Analysis

## I.   Defendant's objections to evidence and Plaintiffs' motion to strike

### A.   Defendant's objections

Defendant objects to Plaintiffs' declarations attached in support of their summary judgment motion. *See* Dkt. No. 42 at 5.

Federal Rule of Civil Procedure 56(e) requires an affidavit or declaration used to support or oppose a motion for summary judgment to (1) be made on personal knowledge; (2) set forth facts that would be admissible in evidence; and (3) show affirmatively that the affiant is competent to testify to the matters stated. *See* FED. R. CIV. P. 56(c)(4). Declarations asserting personal knowledge must include enough factual support to show that the declarant possesses that knowledge. *See Amie v. El Paso Ind. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007). Conclusory declarations cannot create fact issues to defeat a summary judgment. *See First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009); *see also Amie*, 253 F. App'x at 451 (summary assertions or conclusory allegations in a declaration are simply not enough proof to raise a genuine issue of material fact). "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Hugh Symons Grp. v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002). "A court has broad discretion to grant or deny a

motion to strike." *Lorenz v. Wal-Mart Stores, Inc.*, No. SA05CA0319 OG (NN), 2006 WL 1562235, at *5 (W.D. Tex. May 24, 2006).

Defendant argues that the Court should disregard Plaintiffs' declarations because they are conclusory. *See* Dkt. No. 42 at 5. Defendant asserts that none of the declarations contain specific facts, such as the date and amount of walked tabs and cash shortages, the price of uniforms, or the specific percentage they paid into the tip pool. *See id.*

But the Plaintiffs' summary judgment motion concerns only liability and, specifically, whether Defendant can claim a tip credit. *See* Dkt. No. 37. Although the declarations lack precise dates or the amounts of deductions taken from Plaintiffs' wages, as discussed below, any deduction – no matter when or how small – precludes Defendant from taking a tip credit. And so the declarations contain enough facts to support the summary judgment motion. The Court should therefore overrule Defendant's objections.

### B.    Plaintiffs' motion to strike

Plaintiffs move to strike the Affidavit of James Covelli [Dkt. No. 43-1, Ex. 1] attached to Defendant's response, arguing that Defendant failed to disclose Mr. Covelli as a witness. *See* Dkt. No. 44.

Federal Rule of Civil Procedure 26(a)(1)(A)(i) provides that "a party must, without awaiting a discovery request, provide to the other parties ... the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that the

-8-

disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

Under Federal Rule of Civil Procedure 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The disclosing (or late disclosing) party bears the burden of proving the failure to timely disclose was substantially justified or harmless. *See Sightlines, Inc. v. La. Leadership Institute*, No. 3:13-cv-00527-SDD-RLB, 2015 WL 77671, at *1 (M.D. La. Jan. 6, 2015).

In evaluating whether a Rule 26(a) violation is harmless, the Court looks at four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to timely disclose. *See Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). "The court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Klein v. Fed. Ins. Co.*, Nos. 7:03-cv-102-D & 7:09-cv-94-D, 2015 WL 1525109, at *3 (N.D. Tex. Apr. 6, 2015).

After balancing these factors, the Court should grant Plaintiffs' motion to strike. First, although Defendant states the Covelli Affidavit is important to its good faith defense, *see* Dkt. 46 at 2, Defendant also notes that all the exhibits to the Covelli Affidavit were disclosed to Plaintiffs during discovery and that they alone show good

faith, *see id.* at 6. By arguing that these exhibits show good faith even without Mr. Covelli's statements, *see id.*, Defendant undermines their importance.

Second, excusing Defendant's failure to designate Mr. Covelli would prejudice Plaintiffs because they were unable to seek discovery from Mr. Covelli before filing their summary judgment motion. *See Sterling v. United States*, No. 3:18-cv-0526-D, 2020 WL 2425648, at *6 (N.D. Tex. May 12, 2020) (finding plaintiff's failure to timely designate expert witnesses prejudiced the government where it had already moved for summary judgment).

And, while a continuance would allow Plaintiffs to depose Mr. Covelli, the prejudice would merely shift since discovery is closed and Plaintiffs have already moved for summary judgment. Allowing additional time "would only result in additional delay and unnecessary expense for all involved." *Wilson v. Home Depot U.S.A., Inc.*, No. 3:12-cv-5292-B, 2014 WL 1882024, at *5 (N.D. Tex. May 12, 2014).

Finally, Defendant's explanation for its failure to disclose is inadequate. Defendant seems to blame COVID-19 for its failure to disclose or supplement. *See* Dkt. No. 46. at 2-3. But, as Plaintiffs point out, Defendant's initial disclosures were due in October 2018 and Defendant supplemented its discovery after the pandemic began. *See* Dkt. No. 48 at 8-9. The Court recognizes that restaurants like Champps faced a heavy burden during the pandemic; but that does not explain Defendant's failure to disclose Mr. Covelli before the pandemic began or why it was able to supplement other discovery responses, but not its witness list.

Defendant's argument that it disclosed Mr. Covelli as a witness during the 30(b)(6) deposition fails to persuade. A passing mention of a potential witness during a deposition regarding an unrelated topic does not substitute for a Rule 26 disclosure.

Because Defendant failed to disclose Mr. Covelli, and the failure was not substantially justified or harmless, the Court should grant Plaintiffs' motion to strike.

## II.    Motion for Summary Judgment

Plaintiffs move for partial summary judgment on liability, arguing that Defendant paid them less than the minimum wage and that Defendant cannot claim a tip credit.

Under the FLSA, employers must pay employees a minimum wage, which is currently $7.25 per hour. *See* 29 U.S.C. § 206(a)(1). "The FLSA contains an exception that permits employers to pay less than the general minimum wage – $2.13 per hour – to a 'tipped employee' as long as the employee's tips make up the difference between the $2.13 minimum wage and the general minimum wage." *Montano v. Montrose Rest. Assocs., Inc.*, 800 F.3d 186, 188 (5th Cir. 2015) (citing 29 U.S.C. § 203(m)). Known as a "tip credit," this "exception may only be claimed if the employer shows: (1) the employer informed the employees of the provisions contained in § 203(m); and (2) the tipped employees retain all of their tips." *Reyes v. Topgolf Int'l, Inc.*, No. 3:17-cv-883-S, 2018 WL 3999684, at *3 (N.D. Tex. Aug. 2, 2018).

While "[a]n employer may not keep tips received by its employees for any purposes," Section 203 does not "prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2)(A)-(B). But tip pooling is

not allowed, and the tip credit cannot be claimed, if "an employee is required to share tips with an employee who does not customarily and regularly receive tips." *Montano*, 800 F.3d at 189.

Defendant has the "burden of establishing its entitlement to the tip credit," *Montano*, 800 F.3d at 189, which means that Defendant "must put forth evidence that it complied with the provisions of Section 203(m)," *Whitehead v. Hidden Tavern, Inc.*, 765 F. Supp. 2d 878, 882 (W.D. Tex. 2011).

## A.     Kick-back claims

Plaintiffs first argue that Defendant cannot take a tip credit because Defendant forced them to pay for uniforms, cash shortages and walked tabs, copies of payroll documents, and meals, which reduced their wages below the minimum wage. *See* Dkt. No. 38 at 18-20.

"The wage requirements of the [FLSA] will not be met where the employee 'kicks-back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. Put simply,

> there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear. An employer may not deduct from employee wages the cost of facilities which primarily benefit the employer if such deductions drive wages below the minimum wage. *See* 29 C.F.R. § 531.36(b). This rule cannot be avoided by simply requiring employees to make such purchases on their own, either in advance of or during the employment. *See id.* § 531.35.

*Arriaga v. Fla. Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002) (footnote and case citations omitted).

### 1.   Uniforms

Plaintiffs allege that Defendant required them to purchase football shirts as uniforms during the NFL season. *See* Dkt. No. 38 at 20-21.

Although Defendant states that it was against company policy to force employees to purchase uniforms, it does not refute that Plaintiffs were required to pay for football jerseys to wear as uniforms. *See* Dkt. No. 42 at 6. But Defendant argues that Plaintiffs' motion still must be denied because the employees were required to purchase the uniforms themselves, so no deductions from their direct wages were made. *See id.* at 12. And, according to Defendant, Plaintiffs failed to show that the cost of uniforms reduced their wages below the statutory minimum. *See id.* at 12-13.

First, Defendant's contention that Plaintiffs' uniform purchases were not deductions from their wages lacks merit. "Uniforms are primarily for the benefit of the employer," so "a minimum wage employee cannot be required to purchase their own uniforms." *Nail v. Shipp*, No. CV 17-00195-KD-B, 2019 WL 3719397, at *7 (S.D. Ala. Aug. 6, 2019); *see also* 29 C.F.R. § 531.3(d)(1)-(2) (listing "the cost of uniforms and of their laundering" as a "facility found by the Administrator to be primarily for the benefit of convenience of the employer"). It does not matter that Defendant did not deduct the cost of uniforms directly from Plaintiffs' paychecks; by forcing Plaintiffs to purchase the jerseys themselves, Defendant forced Plaintiffs to kick-back a portion of their wages. *See Arriaga*, 305 F.3d at 1236.

-13-

Second, Defendant's argument that Plaintiffs failed to show their wages dropped below the minimum wage must also fail. Since tipped employees must be allowed to keep all their tips, *see* 29 U.S.C. § 203(m)(2)(B), any deductions by the employer must be made from the direct wage paid. And, because there is no dispute that Defendant paid Plaintiffs a direct wage of $2.13 – the minimum wage for tipped employees – any deduction, no matter how small, would lower Plaintiffs' direct wage below the minimum wage. *See* U.S. Dep't of Labor, Wage & Hour Div., ¶ 680 *Fact Sheet #15: Tipped Employees Under the Fair Labor Standards Act*, 2012 WL 1154535 (2018) ("When an employer claims an FLSA 3(m) tip credit, the tipped employee is considered to have been paid only the minimum wage for all non-overtime hours worked in a tipped occupation and the employer may not take deductions for … cost of uniforms, etc., because any such deduction would reduce the tipped employee's wages below the minimum wage."); *see also* Susan N. Eisenberg & Jennifer T. Williams, *Evolution of Wage Issues in the Restaurant Industry*, 30 ABA J. Lab. & Emp. L. 389, 403 (2015) ("[T]he employer must always take its deductions from an employee's 'direct wage' rather than from an employee's tipped wage because the DOL allows the employee to retain 100% of tips. Therefore, if an employee is only earning minimum wage, *any* deduction will improperly reduce the employee's hourly wage below the FLSA minimum wage.").

And Defendant cannot take credit for tips in excess of the tip credit. Defendant seems to view the total wage paid as the sum of the direct wage paid by Defendant plus all of Plaintiffs' tips. *See* Dkt. No. 42 at 13. But "tips [in excess of the tip credit]

-14-

are not payments made by the employer to the employee as remuneration for employment within the meaning of the Act." *Nail*, 2019 WL 3719397, at *8 (quoting 29 C.F.R. § 531.60). "In other words, employers cannot use the tips employees receive above the amount of the tip credit to satisfy the FLSA-mandated minimum wage obligation." Eisenberg & Williams, *supra*, at 402; *see also Bernal v. Vankar Enterprises, Inc.*, 579 F. Supp. 2d 804, 807-08 (W.D. Tex. 2008) ("[C]ourts have found violations of section 203(m) (and therefore of federal minimum wage laws) even where the employees were, in fact, paid the minimum wage once their tips were taken into account.").

Because there is no dispute of fact that Plaintiffs were required to buy uniforms and that those expenditures reduced their direct wage below the minimum, Defendant cannot claim the Section 203(m) tip credit. *See Pedigo v. Austin Rumba, Inc.*, 722 F. Supp. 2d 714, 721 (W.D. Tex. 2010) (granting summary judgment where Defendant conceded "'that it took improper uniform deductions from the paychecks of its servers,' which effectively reduced servers' and bartenders' wages below the minimum wage").

### 2.    Payroll documents

Plaintiffs contend that Defendant charged Plaintiffs for copies of their paychecks and IRS W-2 forms and that these charges amount to improper kick-backs. *See* Dkt. No. 38 at 21.

Defendant does not dispute that it charged for these forms. *See* Dkt. No. 42 at 6. But Plaintiffs offer no authority for their claim that employers are prohibited from charging employees for copies of payroll documents or that such fees amount to illegal

kick-backs. And the only source the Court could locate on this issue seems to allow the practice. *See* INTERNAL REVENUE SERVICE, GENERAL INSTRUCTIONS FOR FORMS W-2 AND W-3, SPECIAL REPORTING SITUATIONS FOR FORM W-2: LOST FORM W-2 – REISSUED STATEMENT (2021), https://www.irs.gov/instructions/iw2w3 (last visited July 15, 2021) ("Employers are not prohibited (by the Internal Revenue Code) from charging a fee for the issuance of a duplicate Form W-2."). Plaintiffs have therefore failed to meet their initial burden to show that they are "entitled to judgment as a matter of law." FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion …."); *Pioneer Expl.*, 767 F.3d at 511 ("If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response.").

### 3.   Cash Shortages and walked tabs

Next, Plaintiffs claim that Defendant forced Plaintiffs to pay for cash shortages and walked tabs, which reduced their wages below the minimum. *See* Dkt. No. 38 at 21-22.

Like Plaintiffs' uniform claims, Defendant does not offer any evidence to rebut that it did not require Plaintiffs to pay for walked tabs and cash shortages. Defendant once again argues only that the payments were not deductions and that Plaintiffs failed to show the deductions reduced wages below minimum wage. *See* Dkt. No. 42 at 12-14.

Requiring an employee to pay for cash shortages and walked tabs is "illegal to the extent that it reduce[s] an employee's wage below the statutory minimum." *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1198-99 (5th Cir. 1972). Because Plaintiffs were paid only the minimum, requiring Plaintiffs to pay any amount for walked tabs and cash shortages is impermissible. Thus, "summary judgment on the issue is appropriate because the unrebutted evidence establishes that [Defendant] deducted losses due to cash register shortages and unpaid tabs." *Bernal*, 579 F. Supp. 2d at 810; *see also Whitehead*, 765 F. Supp. 2d at 883 (granting summary judgment where employer required employees to pay for cash shortages in "violation of Section 203(m)").

### 4.    Meals

Plaintiffs contend that Defendant charged Plaintiffs for more than the actual cost of the meals in violation of Section 203(m). *See* Dkt. No. 38 at 22-24.

"An employer generally may deduct the 'reasonable cost' of board, lodging, or other facilities provided to employees." *Rosales v. Lore*, 149 F. App'x 245, 246 (5th Cir. 2005) (citing 29 U.S.C. § 203(m)). Meals fall under this category since they are "always regarded as primarily for the benefit and convenience of the employee." *Nail*, 2019 WL 3719397, at *8 (quoting 29 C.F.R. § 531.32(a), (c)).

The reasonable cost of meals has been "determined to be not more than the actual cost to the employer" and "does not include a profit." 29 C.F.R. § 531.3(a)-(b). "When [meals] are furnished to the employee at a profit, the deductions … are considered to be illegal only to the extent that the profit reduces the wage (which

-17-

includes the 'reasonable cost' of the facilities) below the required minimum wage." 29 C.F.R. § 531.36(a). "[T]he burden of proving that a deduction from wages represents the reasonable cost of the meals furnished is on the employer." *Herman v. Collis Foods, Inc.,* 176 F.3d 912, 920 (6th Cir. 1999).

Defendant has not met its burden to show it charged no more than the reasonable cost of meals. Defendant does not dispute that it charged employees 50 percent of the menu price for items up to $15. *See* Dkt. No. 42 at 6. But Defendant offers no evidence that this price is the actual cost of the food. "Employers do not need to keep itemized records of the cost of furnishing meals to individual employees, but they must 'maintain records to substantiate the cost of furnishing a class of non-cash benefits under § 203(m).'" *Rong Chen v. Century Buffet & Rest.*, No. CIV.A. 09-1687 SRC, 2012 WL 113539, at *5 (D.N.J. Jan. 12, 2012) (quoting 29 C.F.R. § 516.27(a)).

The only evidence concerning the cost of meals is in Mr. Ritenour's deposition testimony, in which he stated that the "actual cost" of food items "sits around 50, 52 percent" of the menu price. Ritenour Dep. 107:6-11. But "[a]n employer's unsubstantiated estimate of his cost … does not satisfy the employer's burden of proving reasonable cost." *Reich v. Crockett*, 68 F.3d 469 (5th Cir. 1995) (quoting *Caro-Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1514 (11th Cir. 1993)). Without more than Mr. Ritenour's estimate, Defendant failed to meet its burden to show it charged no more than the actual cost of the meals and that profits did not lower Plaintiffs' wages below the statutory minimum. This deduction therefore violates Section 203(m).

Defendant has failed to carry its burden to establish a genuine issue of material fact as to whether it required its employees to pay for uniforms, cash register shortages and walked tabs, and meals above their actual cost. Defendant is therefore not entitled to utilize the tip credit provision and the Court should grant Plaintiffs' motion.

## B.     Tip-Pool Claims

Plaintiffs contend that Defendant required them to share their tips with employees who did not customarily and regularly receive tips in violation of Section 203(m). Plaintiffs assert that service bartenders, barbacks, a dishwasher, and an employee named Ricky all participated in the tip pool despite being non-tipped employees in violation of Section 203(m). *See* Dkt. No. 38 at 24-30.

"If an employee is required to share tips with an employee who does not customarily and regularly receive tips, the employer may not legally take a tip credit." *Montano*, 800 F.3d at 189. "Determining whether an employee is one who 'customarily and regularly receives tips' is a fact-intensive inquiry that requires a case-by-case analysis of the employee's duties and activities." *Id.* at 194. "[I]n determining whether an employee customarily and regularly receives tips, a court – or a factfinder – must consider the extent of an employee's customer interaction," as well "whether the employee is engaging in customer service functions." *Id.* at 193.

### 1.     Service bartenders and barbacks

First, Plaintiffs contend that the service bartenders and barbacks did not customarily and regularly receive tips at Champps. Regarding the service bartenders,

Plaintiffs argue that the service bar is located near the kitchen and that the service bartenders did not directly serve or interact with customers. *See* Dkt. No. 38 at 12. As for the barbacks, Plaintiffs contend that they also had no direct customer interaction and that their duties consisted primarily of stocking and cleaning in the back of the house. *Id.* at 12-13.

The Court should find that there is a genuine dispute of material fact as to whether Champps' service bartenders and barbacks are tipped employees. The Department of Labor has listed "service bartenders" as a tipped occupation. *See Montano*, 800 F.3d at 190–91 (citing U.S. DEP'T OF LABOR, *Field Operations Handbook* § 30d04(a), (c) (1988)). Likewise, "[b]arbacks who assist bartenders, primarily work in front of and around customers, and have the opportunity to occasionally interact with customers are tipped employees because they are similar to busboys." *Id.* at 192 (citing U.S. DEP'T OF LABOR, WAGE & HOUR DIV., *Opinion Letter*, 2009 WL 649014, at *1–2 (Jan. 15, 2009)).

And, while "the extent of an employee's customer interaction requires 'an *ad hoc* analysis of [the] employee's duties, rather than a *per se* determination based upon [the] employee's job title," *Reyes*, 2018 WL 3999684, at *3 (quoting *Pedigo*, 722 F. Supp. 2d at 729-30), the record evidence supports that Champps service bartenders and barbacks had "more than a dimimis interaction with the customers who leave undesignated tips," *Montano*, 800 F.3d at 193. Mr. Ritenour noted that the service bartenders worked in view of "four or five" customer tables and guests could "call drinks if they're right there." Ritenour Dep. 34:1-19. And he noted that barbacks

-20-

worked behind the bar and could speak directly to customers. *See id.* at 36:20-24 – 37:1-3.

Because Plaintiffs' and Defendant's job descriptions for the service bartenders and barbacks differ significantly, including the amount of customer interaction they had, this question should be left to the finder of fact. *Cf. Montano*, 800 F.3d at 19 (holding material fact dispute existed as to whether "coffeeman," who had limited customer interaction, was customarily and regularly tipped employee).

### 2.    Dishwasher

Next, Plaintiffs argue that Defendant required them to share tips with an employee named Gerardo during shifts in which he worked as a dishwasher. *See* Dkt. No. 38 at 25-26. Plaintiffs contend that, because dishwashers are non-tipped employees, this violates Section 203(m). *See id.* at 26-27. In support, Plaintiffs point to records produced by Defendant that show that between August 12, 2017 and August 23, 2021, Gerardo clocked in as a dishwasher, *see* Dkt. No. 39-1, Ex. 17 at 200 (timesheet with job codes), yet received tips from the tip pool, *see id.* Ex. 15 at 167-69, 171-72, 174-77 (tip-out sheets).

Defendant concedes that, generally, dishwashers are not customarily and regularly tipped, *see* Dkt. No. 42 at 11, and the Fifth Circuit agrees, *see Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 231 (5th Cir. 2011) ("Customarily … [b]ack-of-the-house staff like cooks and dishwashers do not [receive tips] and thus cannot participate in a mandatory tip pool.").

Defendant argues that Gerado worked both as a busser – a tipped occupation – and as a dishwasher, making his participation in the tip pool acceptable. *See* Dkt. No. 42 at 11. But, when a person is employed in both tipped and non-tipped occupations, "no tip credit can be taken for his hours of employment in his occupation [as a non-tipped employee]." 29 C.F.R. § 531.56(e). The unrebutted evidence shows that Gerado participated in the tip pool during several shifts during which he worked as a dishwasher, which is a violation of Section 203(m).

### 3.   "Ricky"

Plaintiffs finally contend that Defendant shared Plaintiffs' tips with an employee named Ricky who may not have been a tipped employee. While Ricky shows up on the tip-out sheets as a busser, Plaintiffs assert that Defendant lacks any employment records for Ricky and therefore it cannot verify that Ricky worked in a tipped position – or even at the restaurant at all. *See* Dkt. No. 38 at 27. Without those records, Plaintiffs argue, Defendant cannot show that it complied with the Section 203(m) tip pool requirements and summary judgment must be granted. *See id.* at 30-31.

Plaintiffs are correct that the FLSA requires employers to keep records of the hours and wages paid to its employees. *See* 29 U.S.C. § 211(c). And, "[f]or tipped employees, the employer is also required to maintain and preserve records of the weekly or monthly amount of the tips received and reported by the employee, and the amount by which the tipped employee's wages have been increased using the tip

credit." *Perez v. Sophia's Kalamazoo*, LLC, No. 1:14-cv-772, 2015 WL 7272234, at *4 (W.D. Mich. Nov. 17, 2015) (citing 29 U.S.C. § 516.28(a)(2), (3)).

But a violation of these requirements does not create automatic liability on a minimum wage claim. Rather, a violation lessens the plaintiff's burden of proof to show the extent of damages and then shifts the burden to the defendant to negate the plaintiff's reasonable inferences. *See id.* at *5 (citing *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 551 (6th Cir. 1999); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946)). The standard of proof that a FLSA violation occurred is not removed, *see id.*, and the plaintiff must still show that damages in fact occurred, *see Mt. Clemens*, 328 U.S. at 688.

And, while an employer must still meet its burden to show that it complied with the tip-credit provisions, a lack of record keeping is not necessarily fatal. *Cf. Basina v. Thai*, No. 14 C 4090, 2016 WL 6833921, at *6 (N.D. Ill. Nov. 21, 2016) (denying partial summary judgment on liability where employer failed to keep adequate records, but produced admissible evidence showing rough estimates of hours worked creating a material issue of fact).

Here, the only evidence in the record concerning Ricky is the tip-out sheets that show he was tipped for his work as a busser. While Plaintiffs argue that Ricky was not a tipped employee – and may not have even worked at Champps – these are only inferences drawn from the lack of payroll records. *See* Dkt. No. 38 at 27-28. The only competent summary judgment evidence in the record shows that Ricky was a busser. Because "[t]he evidence of the nonmovant is to be believed, and all justifiable

-23-

inferences are to be drawn in [its] favor," *Porter*, 810 F.3d at 942-43, the Court should find there is a material issue of fact as to whether Ricky was a customarily and regularly tipped employee and that summary judgment on this issue is not appropriate.

### C.  Good faith

Finally, Plaintiffs move for summary judgment on Defendant's good faith defense. *See* Dkt. No. 38 at 32-33.

Under the FLSA, an employer who violates the minimum wage requirement "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages ... and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). "Although the language of § 216(b) is mandatory, Congress has granted district courts the sound discretion not to award liquidated damages if the employer shows (1) 'that the act or omission giving rise to such action was in good faith' and (2) 'that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA.'" *Williams v. Sake Hibachi Sushi & Bar, Inc.*, No. 3:18-cv-0517-D, 2020 WL 3317096, at *4 (N.D. Tex. June 18, 2020) (citing 29 U.S.C. § 260; *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979); *Hays v. Republic Steel Corp.*, 531 F.2d 1307, 1309 n.3 (5th Cir. 1976)). "Even if the district court determines that the employer's actions were taken in good faith and based on reasonable grounds, the district court still retains the discretion to award liquidated damages." *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999).

To satisfy the defense, an employer must produce "plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it." *Sake Hibachi Sushi*, 2020 WL 3317096, at *4. "If an employer suspects that it is out of compliance with the FLSA, it cannot act in good faith." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (quotations and alterations omitted).

The employer has the burden to prove the good faith defense. *Barcellona*, 597 F.2d at 468. The burden is a difficult one to meet; "[d]ouble damages are the norm, single damages the exception." *Sake Hibachi Sushi*, 2020 WL 3317096, at *4 (quoting *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987)); *see also Chisolm v. Gravitas Rest. Ltd.*, No. CIV.A. H-07-475, 2008 WL 838760, at *5 (S.D. Tex. Mar. 25, 2008) (noting that an "employer faces a substantial burden of demonstrating good faith and reasonable belief that its actions did not violate the FLSA").

Reviewing the admissible evidence in the record, the Court should find that Defendant has not met its substantial burden to show good faith and reasonable grounds for the violation. Without the Covelli Affidavit, the only evidence indicating good faith is that "Mr. Ritenour was surprised that employees covered cash shortages and had to buy a Cowboys jersey" since these actions "were against Defendant's policy." Dkt. No. 42 at 15 (quoting Ritenour Dep. 104:16-105:12; 100:5-12; 101:6-14). Being surprised by a FLSA violation does not show good faith.

Even if the Court considers the Covelli Affidavit, this decision should not change. Mr. Covelli states that, when Defendant purchased the Champps restaurants

in 2016, the seller told Defendant that its employee policies and employee handbook had been prepared by its senior vice president of human resources and reviewed by outside counsel. *See* Dkt. No. 43-1, Ex. 1 ¶ 5. Based on these representations, and its own review by general counsel, Defendant continued using the policies and handbook. *Id.*

But Defendant fails to show that it ever reviewed the actual policies being carried out at the restaurant. While Mr. Ritenour may have been surprised by the policies implemented by the Champps manager, there is no indication that these policies were implemented in secret; for example, a manager sent a message on the Champps internal manager log to all the employees letting them know they were required to purchase and wear the football shirts. *See* Dkt. No. 39-1, Ex. 3 at 124-26. And there is no evidence concerning Defendant's actions to ensure compliance with its policies, or that the policies touched on the specific violations raised by Plaintiffs. Without more, Defendant has not shown good faith or a reasonable belief concerning the specific violations at issue in this case.

## Conclusion

Defendant has failed to show that its failure to timely disclose James Covelli as a witness was substantially justified or harmless. Therefore, the Court should GRANT Plaintiffs' Motion to Strike [Dkt. No. 44] and STRIKE the Affidavit of James Covelli [Dkt. No. 43-1, Ex. 1].

Defendant also failed to meet its burden to show it is entitled to a tip credit. Without that credit, there is no dispute that Defendant paid Plaintiffs below the

-26-

minimum wage in violation of the FLSA. And Defendant did not carry its substantial burden to show good faith or reasonable grounds for the violation. The Court should therefore GRANT Plaintiffs' Motion for Summary Judgment [Dkt. No. 37].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 15, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-27-